RUMNEY v. DETROIT & MONTANA CATTLE CO.

1. CONTRACTS—JOINT LIABILITY—SET-OFF.

  A contract between defendant corporation and plaintiff and his brother provided that the latter persons should, for an agreed compensation, take charge of cattle belonging to the corporation, provide sustenance therefor, and market them, keeping and rendering an account of their receipts and disbursements. *Held*, that there was no several liability on the part of plaintiff and his brother, entitling the corporation to set off alleged claims under the contract against plaintiff's claim for dividends on stock owned by him.

2. APPEAL—EVIDENCE—PRESUMPTION.

  Where the evidence is not contained in the record, it will be presumed that there was evidence to support the judgment.

Error to Wayne; Hosmer, J. Submitted November 22, 1901. Decided March 18, 1902.

*Assumpsit* by John G. Rumney against the Detroit & Montana Cattle Company to recover certain dividends on stock in defendant corporation. From a judgment for plaintiff, defendant brings error. Affirmed.

Plaintiff was the owner of some of the capital stock of the defendant company, and was entitled to a dividend upon the same for $4,736. To recover this sum, he instituted this suit, upon the refusal of defendant to pay. The defendant admitted the plaintiff's claim, but sought to defeat recovery by a set-off. This set-off arises out of a contract made October 15, 1887, between plaintiff and his brother and the defendant, by the terms of which the defendant agreed to sell and convey to the Messrs. Rumney certain real estate and certain personal property then situated in Montana. The Messrs. Rumney were to take charge of the cattle and other property of the defendant situated upon its ranch in Montana, for which they were

to receive an agreed compensation. The Messrs. Rumney were to provide hay, grain, and fodder on the ranch at cost prices. They were to market the live stock, the expenses thereof to be paid by the defendant. They agreed, also, to keep a full and complete account of moneys received and disbursed, and render an account thereof. The contract was not assignable without the written assent of the defendant. Further statement of the terms of the contract is unnecessary. The Messrs. Rumney entered upon the performance of the contract, and continued therein until September 26, 1888, when they, by the written assent of the defendant, assigned their interest in the contract to the Rumney Land & Cattle Company, which was organized by them, and of which they owned the most of the stock. In their written consent it was expressly stated that the personal obligations of the Messrs. Rumney, imposed by the contract, were in no wise waived.

The cause was referred to a referee. Testimony was taken before him, and he made a long finding of facts and law, covering 40 pages; finding for the plaintiff for the amount of his dividends and interest thereon. Exceptions were taken to this report, and were heard by the court below, overruled, and judgment entered for plaintiff. No testimony taken by the referee is returned. In his finding are the contract; certain proceedings taken by the directors of the defendant, as appears by the record kept by them; certain letters written by the secretary of the defendant to the plaintiff; and copies of the accounts rendered by the Rumney Land & Cattle Company, covering the years 1888 to 1893. It appears from the proceedings of the directors that on January 26, 1891, the accounts for March and September, 1890, and January, 1891, were referred to Mr. S. T. Douglas, a director, with authority to investigate as he deemed best as to the correctness, under the contract, of the items of the accounts, and his finding was to be final as between the parties to the contract; the finding to be submitted to the acting president for his approval. The defendant at the same time gave its note

to the Rumney Land & Cattle Company for $3,581.74, but upon the agreement and stipulation that the note should not constitute an approval of the items of the account until they had been examined and passed upon according to the above resolution. This note was renewed April 25, 1891, for $3,916.51. Mr. Douglas reported that the accounts up to January 1, 1891, showing a balance due the Rumney Land & Cattle Company of $3,581.74, were substantially correct. The referee reports that "there were some corrections to be made, but what they were, or whether they were in fact made, the proofs do not show." He also reported that there was no proof as to whether Mr. Douglas submitted his findings to the acting president. There has been no other adjustment of accounts between the parties. The referee stated in his report:

"Amounts charged the defendant company in the accounts rendered, at cost of production of hay, are estimates of such cost made by the plaintiff. The details of cost were not furnished the defendant, and the proofs do not show what the actual cost of production was, nor the details which the estimates include. The moneys collected by the Messrs. Rumney or by the Rumney Land & Cattle Company were not remitted to the defendant, but were credited to it in the various statements of account hereinbefore set forth."

*Charles W. Casgrain, Edwin F. Conely*, and *Orla B. Taylor*, for appellant.

*Russel & Campbell*, for appellee.

GRANT, J. (*after stating the facts*). 1. Was the defendant entitled to set off against the individual claim of the plaintiff the joint debt of plaintiff and his brother, if it could establish such debt? The contract upon which defendant's set-off is based is not a several contract. The learned counsel for defendant call the Messrs. Rumney "trustees," and argue that each is individually responsible for what came into his hands, or for his transactions with the defendant. The contract contains not a

sentence from which an individual liability can be implied. They jointly, and not severally, agreed to carry out the contract. Any act of each in pursuance thereof was the act of both. Each was liable for the acts of the other. Naturally, each would be engaged in performing different acts from the other, in performing the contract. Defendant could not sue each separately, and probably would not attempt to do so, in bringing a suit upon the contract. It is immaterial whether you call the Messrs. Rumney "trustees" or "contractors." They are no more trustees than are any other parties to a contract whereby they agree to manage the property of another, and to render an account therefor. The contract creates no such trust as would be enforceable in a court of equity. Equity could only obtain jurisdiction on the ground of an accounting, which can as well be had at law, as was done here, by referring it to a referee. This is not a case of a joint and several note, which may be set off against the demand of either of the makers, as was done in *Ferguson* v. *Millikin*, 42 Mich. 441 (4 N. W. 185). For this reason alone the judgment of the court below is correct.

2. The merits of the set-off cannot be considered by this court. The evidence is not reported. The defendant's claim appears to be based upon the theory that, under the contract, defendant was to pay the actual cost, only, of hay and other articles purchased and furnished by the Messrs. Rumney. The contract itself expressly provided that it shall pay them only the cost. The referee reports that the details of the cost were not furnished, etc.; but why they were not furnished does not appear. There may have been good reasons. The case was tried some 10 years after the goods were purchased. Were the original bills lost, without fault of the Messrs. Rumney? If so, would they not be entitled to resort to proof, by those who are familiar, "of the estimates of such cost," which means, we assume, testimony by those who knew the cost of such articles at the time and place? Certainly the referee must have had testimony to satisfy him that the

Messrs. Rumney had complied substantially with the contract in this regard, and had legally excused themselves for not producing the items of actual cost. In the absence of any statement to the contrary, we must assume that such proof was before him. To illustrate: In these accounts are items of hay furnished from September 30, 1888, to October 15, 1893, amounting in all to $18,860, according to the bills, which appear to have been seasonably rendered. These were objected to by the defendant because their actual cost was not shown. This large account must certainly have been the subject of testimony which satisfied the referee and the court below as to its correctness, and that the items therein mentioned were furnished substantially in accordance with the contract.

Other questions are raised, but, as the above is conclusive of the result, we need not discuss them.

Judgment affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.